STATE CENTRAL SAVINGS BANK of Keokuk, Appellee, v. W. C. CALVERT, Administrator et al., Defendants, O. C. BOTT, Cross-petitioner, Appellant.

No. 42723.

FEBRUARY 5, 1935.

J. C. Calhoun and J. O. Boyd, for appellant.

E. W. McManus, for appellee.

DONEGAN, J.—In 1919, A. H. Rich and O. C. Bott became the owners of a farm in Van Buren county consisting of 165 acres. This farm was what was known as a commercial orchard containing no land under cultivation, but being altogether devoted to the raising of apples and pears. After the purchase of this farm, the owners, Rich and Bott, operated it until and including the season of 1930. This operation was not always profitable and it was necessary for the owners to meet the excess of the disbursements over receipts out of their individual resources. Apparently Rich was not at all times able to advance his share of such excess expenses, and, on January 1, 1931, he gave Bott his note for $3,486.83, as evidencing the amount of money which Bott had advanced to or for the benefit of Rich in order to take care of Rich's share of the excess of expenditures over receipts. Some time in January, 1931, negotiations were entered into by Rich and Bott with Louis D. and Ralph Kelsey, in reference to the sale of said land to the Kelseys, and eventually a contract, dated February 17, 1931, was executed for the sale of this land to the Kelseys for $45,000. It was at first agreed that the Kelseys would pay the sum of $5,000 upon the execution of the contract. Before the contract was executed, it was discovered that Rich had placed a mortgage for $10,000 upon his interest in the land, and the Kelseys refused to execute the contract unless this mortgage was released. In order to meet this contingency, Mr. Smith, an attorney at law, who was representing Rich and Bott in the transaction, induced the Kelseys to make their first payment $7,500 instead of $5,000, and Bott advanced $2,500, thus making the $10,000 necessary to release the mortgage. About this same time, Smith, the attorney who was acting for Rich and Bott, drew up a statement showing the items of indebtedness owing by Rich to Bott, and the amounts which each of them would be entitled to receive out of the $37,500 still remaining unpaid on the contract for the sale of the land. This statement is known in the record as Exhibit D-2, and is as follows:

```
"Contract  price ...........................................................  $45,000.00
Cash  payment...........................................................    7,500.00

Balance  due ...........................................................   37,500.00
Share  of  each...........................................................   18,750.00
```

Due Otto C. Bott from Addison H. Rich—

```
Note of January 1st, 1931................................$3,486.83
Interest to February 20th, 1931.........................    28.49
January  Expense ...................................    95.18
Advance  to  pay  bank  note...................  2,500.00
Share of cash payment used to pay bank note 3,750.00      9,860.50

Balance due Addison H. Rich from contract................   8,889.50
Amount  due  Otto  C.  Bott  from  contract.........................   28,610.50

                                                         $37,500.00"
```

⸱Mr. Smith went over this statement with Rich and Bott and then drew up a contract between Rich and his wife, first parties, and Bott, second party, which is known in the record as Exhibit D-1, and is as follows:

"This agreement made by and between Addison H. Rich and Elia Rich, his wife, first party, and Otto C. Bott, second party, witnesseth:

"That whereas, Addison H. Rich and Otto C. Bott are the owners of certain property in Van Buren County, Iowa, known as Grey Heath Orchard, a more particular description of which is attached to the contract hereinafter described and of which this is a part, and

"Whereas, the parties hereto have entered into a contract with Louis D. Kelsey and Ralph Kelsey for the sale and purchase of said orchard for Forty-five Thousand ($45,000) Dollars, payment of Seventy-five Hundred ($7,500.00) Dollars in cash and the balance of Thirty-seven Thousand Five Hundred ($37,500.00) Dollars in payments.

"Now therefore, it is agreed by and between the parties hereto that the interest of Otto C. Bott in said contract is Twenty-eight Thousand Six Hundred and Ten Dollars and Fifty Cents ($28,610.50), and the interest of Addison H. Rich in said contract is Eight Thousand Eight Hundred and Eighty-nine Dollars

and Fifty Cents ($8,889.50) and their title to the real estate is held by them in proportion to the amounts due them under said contract.

"It is further agreed that the payments of the principal under said contract shall be paid to Otto C. Bott until his interest in said contract shall be reduced to Eight Thousand Eight Hundred and Eighty-nine Dollars and Fifty Cents ($8,889.50), and after said amount is reached that the payments of the principal shall be divided equally between the parties hereto."

This contract was dated February 21, 1931, was executed and acknowledged by the parties, and both this contract and the contract for the sale of the land by Rich and Bott to the Kelseys, which was also acknowledged, were then filed for record in the office of the recorder of Van Buren county. At the time of the execution of the contract between Rich and Bott, known as Exhibit D-1, no new note or other evidence of the indebtedness was executed by Rich to Bott, but the note dated January 1, 1931, for $3,486.83, which Rich had previously given to Bott, was returned by Bott to Rich.

The Kelseys took possession of the land shortly after the execution of the contract and operated the orchard for the year 1931. So far as the record shows, a payment of $500, which, according to the contract, was to be paid by them on January 1, 1932, was not paid, and they surrendered the contract about that time, or shortly thereafter. In August, 1931, Rich was indebted to the State Central Savings Bank of Keokuk, Iowa, in the sum of $3,200, and the note evidencing this indebtedness was also signed by his brother, C. M. Rich. About that time Rich went to the bank for the purpose of having it release the note upon which his brother's signature appeared and advance him an additional amount of money, and for the total amount of his indebtedness to the bank he proposed to give security by way of an assignment of his interest in the contract for the sale of the land to the Kelseys. He had with him the recorded instrument which included not only the contract with the Kelseys, but the contract between Rich and Bott. After some negotiations, the bank released the $3,200 note and accepted a new note from Rich in the sum of $5,600, and, as security therefor, accepted an assignment from him of his interest in the contract for the sale of the land to the Kelseys.

Rich died in April, 1932, and, his note to the bank not having been paid, the bank on December 5, 1933, commenced this action in equity for the recovery of the balance due upon the note and for the foreclosure of the lien claimed by it against Rich's interest in the land and in the contract for the sale of the land to the Kelseys under its assignment of such contract from Rich. Bott, who was made a defendant in this action, answered, admitting the death of Rich and the appointment of the administrator of his estate, but denying generally all the other allegations of the petition. By way of further answer, Bott alleged that the land was owned and operated by him and Rich as a joint adventure in which each had a one-half interest; that the contract executed between him and Rich, and known as Exhibit D-1, was not intended to and did not establish their respective interests and ownership in the Kelsey contract and in the land, but was in the nature of a mortgage giving to him, Bott, a lien upon Rich's one-half interest in the contract and in the land, for the amount in which Rich had become indebted to him; that both the Kelsey contract and the contract between Bott and Rich were of record and the plaintiff-bank had knowledge of same; and that, the assignment which the bank had taken from Rich was taken subject to the prior right and lien of Bott against the said contract and land. Defendant Bott also filed a cross-petition containing practically the same allegations as the affirmative part of his answer. In his cross-petition Bott also alleged that after the contract had been surrendered by the Kelseys, he made advancements in the operation of the orchard, during the seasons of 1932 and 1933, in the sums of $44.85 and $4,841.17, respectively, and that Rich was indebted to him for one-half of said advancements. He asked that he be decreed to have a lien against the interest of Rich and his estate in the land and contract with Kelseys, that such lien be decreed to be prior to any interest of the plaintiff or the codefendants, or any of them, and that any interest of Rich or his estate or heirs or assigns be ordered sold to satisfy such lien.

Plaintiff-bank filed a reply to the answer of the defendant Bott, and filed an answer to his cross-petition, in which the matters upon which defendant Bott based his claim to a lien on the contract with the Kelseys and in the land were denied. Upon the trial of the case, the trial court found that the contract between Bott and Rich, Exhibit D-1, defined their respective interests in the con-

tract of sale made with the Kelseys and in the land, and that, pursuant to the provisions of said contract, Bott was seized of a 76.3 per cent interest and Rich was seized of a 23.7 per cent interest in said real estate; that, by the assignment made to it by Rich, the plaintiff-bank acquired a lien from the date of such assignment, August 12, 1931; that, subsequent to the death of Rich, Bott, as cotenant, had paid out for the benefit of the common property the sum of $3,686.02, of which amount 23.7 per cent, or $873.59, was due to Bott from Rich and should be a prior lien against the interest of said Rich in the real estate; that the sum of $6,094.93, with interest and costs, was due from Rich to the plaintiff-bank and was a lien upon the interest of Rich in the land and in the contract for the sale thereof from the date of the assignment, to wit, August 12, 1931, subject only to the lien established in favor of the cross-petitioner, Bott. Rich's surviving spouse and his daughter, who were his only heirs, together with the daughter's husband, were made parties defendant, but made no appearance and no claim is made by them in connection with this appeal. The decree ordered that a special execution issue for the sale of the 23.7 per cent interest of Rich in the land; that out of the proceeds of such sale Bott be paid the sum of $873.59 with interest and costs; that the balance, if any, be applied to the satisfaction of the lien of plaintiff-bank, with interest and costs; and that the residue, if any, be paid to the administrator of Rich's estate. From such decree, the defendant Bott appeals.

The appellant contends that the decree of the trial court should be reversed, first, because the land in question was a part of the property owned by a joint adventure which had not been dissolved, and that, under the law applicable to joint adventures, Bott had a prior claim and lien upon all of Rich's interest in the property of the joint adventure for the total amount of Rich's indebtedness to him; and, second, because the contract executed between Bott and Rich, Exhibit D-1, instead of fixing the interests of Bott and Rich, respectively, in the contract and in the land, was in the nature of a mortgage on Rich's interest to secure the payment of his indebtedness to Bott. Appellant devotes a large part of his argument and cites a great many cases in support of his contention that the land in question and the contract for its sale to Kelseys were the property of a joint adventure in which he and Rich were engaged, and that their rights therein are governed by the law applicable to

partnerships, which is also applicable to joint adventures. But, even if it be conceded that Rich and Bott were engaged in a joint adventure and that the law of partnerships is applicable thereto, in our opinion, it is quite questionable here whether the land itself was ever the property of such joint adventure. It is true, of course. that real estate may be the property of a partnership or joint adventure, and that its ownership may be shown to be in a partnership or joint adventure, by parol evidence, even though the title is not in its name. A joint adventure, like a partnership, must be the result of a contract. There is in this case no evidence of either a written contract or express oral contract covering the organization of the joint adventure or the property belonging to it. While an implied contract constituting a partnership or a joint adventure may be proved by circumstantial evidence, and, while there may be sufficient in the evidence in this case to indicate a joint adventure as to the operation of the land, we think the evidence that the land itself became a part of the assets of the joint adventure is rather weak. If the land never was the property of the joint adventure, but was the property of the owners as tenants in common, then, of course, Rich continued to be the owner of at least a 23.7 per cent interest therein in his own individual right, after the execution of the contract, Exhibit D-1, with Bott, and the assignment of all his interest in this contract and in the contract with the Kelseys conveyed such interest to the bank.

But, even if the joint adventure ever did include the ownership of the land itself, we think that the execution of the contract, Exhibit D-1, between Rich and Bott terminated such ownership of the land by the joint adventure. Assuming that the land was owned by the joint adventure when the sale of the land was made to the Kelseys, it is unquestioned that Rich was indebted to Bott at that time, because of advancements made by Bott for his benefit in the joint enterprise, in the sum of $9,860.50. This amount was arrived at in the statement, Exhibit D-2, prepared by the attorney for both of them, before the contract between them, Exhibit D-1, was entered into. At that time Bott held the promissory note of Rich, dated January 1, 1931, for $3,486.83, and there had accrued thereon interest in the sum of $28.49, making a total of $3,515.32 then owing by Rich to Bott upon said note. There was also owing to Bott from Rich at that time a balance of $6,345.18. This balance comprised $95.18, January expense of operation of farm; the

$2,500 advanced by Bott in paying off. Rich's $10,000 mortgage; and $3,750, being Bott's one-half of the first payment of $7,500 made by the Kelseys; all of which, with the note, went to make up the total of $9,860.50. If the land and the contract for its sale to Kelseys was the property of the joint adventure and if it was the intention that they should continue as the property of the joint adventure and that Rich was to continue to owe Bott the sum of $9,860.50, according to appellant's contention, applying the law of partnerships to the joint adventure, appellant would have had a prior claim and lien upon all of Rich's interest in the property of the joint adventure for the full amount of Rich's indebtedness to him and it would not have been necessary to execute any contract whatever. If, under such a situation, any writing was deemed necessary to evidence the status of the parties and their intention that it should continue, it would seem more reasonable that it should have been a promissory note for the balance of $6,345.18, for which he did not already hold Rich's note, so that Bott would have had promissory notes to evidence Rich's indebtedness to him in the full sum of $9,860.50. No such promissory note was executed, and there is no evidence that it was ever contemplated or even mentioned. Instead, Bott surrendered to Rich the note of January 1, 1931, for $3,486.83, with the accrued interest in the sum of $28.49, which he already held, and he entered into a new contract with Rich and Rich's wife, Exhibit D-1.

Appellant contends that this new contract was in the nature of a mortgage to secure the total indebtedness of $9,860.50 owing to him by Rich. We have considered this contract very carefully in the light of all evidence, and, instead of showing an intention of the parties that it was to be taken as evidence of an indebtedness of $9,860.50 owing to Bott by Rich, and as evidence of a lien upon all of Rich's interest in the contract with the Kelseys and in the land, to secure the payment of such indebtedness, in our opinion, this contract by its plain terms evidences a settlement and adjustment of the indebtedness from Rich to Bott by giving to Bott a greater interest in the contract with the Kelseys and in the land in payment and settlement of the amount of the indebtedness owing to him by Rich. This contract was drawn up by a lawyer. In drawing this contract, the lawyer was acting for both parties, and it is not questioned that he was acting honestly and was trying to express the intention of the parties in writing. If this contract

had been intended as an evidence of the indebtedness from Rich to Bott and as a security for same, it cannot be assumed that the lawyer would fail to have it express such intention. If it had been the intention of the parties that the joint adventure should continue, that the land and the contract with Kelseys should be the property of the joint adventure, that Rich should continue to own one-half of the joint adventure, that the indebtedness from Rich to Bott should continue in existence, and that Bott should have as security for the payment of such indebtedness a lien on all of Rich's interest in the contract and land, it would have been a very simple matter to say so in the contract. In fact, if such had been the intention, it could have been stated almost as briefly as we have stated the proposition in the last preceding sentence. The contract, however, contains no reference to a joint adventure. It states that Rich and Bott are the owners of certain property more particularly described in the contract attached to the contract between Rich and Bott, which is the contract for the sale of the land to the Kelseys. The contract for the sale of the land to the Kelseys made no reference to a joint adventure, but was a contract by which Rich and Bott sold the 165 acres of land to the Kelseys. The contract between Rich and Bott further refers to the contract for the sale of the land to the Kelseys, on which a balance of $37,500 remains unpaid, and states that "it is agreed by and between the parties hereto that the interest of Otto C. Bott in said contract is Twenty-eight Thousand Six Hundred and Ten Dollars and Fifty Cents ($28,610.50), and the interest of Addison H. Rich in said contract is Eight Thousand Eight Hundred and Eighty-nine Dollars and Fifty Cents ($8,889.50), and their title to the real estate is held by them in proportion to the amounts due them under said contract." This language is so clear and comprehensive that it does not seem to leave any doubt or room for the application of rules of construction as to its meaning. Moreover, we think that, even under appellant's contention as to the applicability of the law of partnerships, the circumstances indicate that it was the understanding of the parties that the land did not belong to the joint adventure and was not subject to the rules applicable to partnership property. In Smith v. Smith, 179 Iowa 1365, loc. cit. 1373, 160 N. W. 756, we said:

"The authorities in this country as well as England agree that real estate upon being acquired by a copartnership is to be treated

as having been converted into personalty to the extent that it may be required to meet partnership obligations and to pay any balance owed to one partner by the other in the settlement of its affairs, * * * "

If, therefore, this land was the property of the joint adventure, it would, under the law, be treated as personalty, so far as required to meet obligations of the joint adventure or to pay any balance owed by Rich to Bott. It appears from the record that there were no other obligations except those owed by Rich to Bott. As between Rich and Bott, therefore, if the land belonged to the joint adventure, all of Rich's interest in the land was subject to being applied in paying Rich's indebtedness to Bott, before any part of it could be used in the payment of Rich's individual obligations. As personalty belonging to the joint adventure, Rich's wife had no interest therein and it was unnecessary that she join in the contract between Rich and Bott. However, she was a party to this contract and signed and acknowledged the same. Her signature and acknowledgment to the contract would seem to support the theory that the land was not the property of the joint adventure, but was the property of Rich as a cotenant of Bott, and that Rich's wife was a necessary party in order to release her dower interest therein.

Appellant places much stress upon the further provision of the contract between him and Rich, which provides that the payments on the Kelsey contract shall be made to Bott until the payments on the principal shall reduce Bott's interest therein to $8,889.50, being the same amount as the interest of Rich in the balance of the Kelsey contract, and that, thereafter, the payments of the principal shall be equally divided between Rich and Bott. However, we do not place as much importance on this clause as appellant seems to attach to it. We think it can be easily explained by the fact that Bott had already advanced large sums for Rich's benefit, and that he was in a position to demand and might reasonably demand that the payments be made to him until his investment in the land was reduced to an equal basis with Rich's. That this arrangement was not proposed by Rich and that Rich had hoped to get something out of the payments before Bott had been paid an amount equal to Rich's indebtedness to Bott, seems to appear from the letter which Rich wrote Bott in which, referring to the manner in which the payments were to be made, he said, "This is only fair,

but in my distress I was rather hoping that I might be privileged to participate in the first payment."

Appellant quotes extensively from and places much reliance upon Norwood v. Parker, 208 Iowa 66, 224 N. W. 831. In that case, however, it appeared that the partnership, consisting of the defendant, Parker, and one Shuler, was dealing in land as partnership property, and that "Shuler had made no declarations and had filed no instrument limiting his interest."

In our opinion, even if the land involved in this case ever did belong to the joint adventure, such joint adventure was terminated and dissolved when the land was sold and the contract was entered into between Rich and Bott. We think the circumstances, as well as the contract itself, indicate that when this contract between Rich and Bott was entered into, Bott received payment from Rich of the amount that Rich then owed him by receiving from Rich and his wife an additional interest in the contract of sale and in the land to the extent of such indebtedness owing to him by Rich. A simple mathematical computation shows that, as found by the trial court, Bott was entitled to and became the owner of a 76.3 per cent interest in the Kelsey contract and in the land, and Rich remained the owner of a 23.7 per cent interest in such contract and land.

Appellant also complains of the court's finding as to the amount which Rich's interest should contribute to the expenses of the operation of the farm for the years 1932 and 1933. The total amount of such excess of expenditures above receipts for these two years was $3,686.02. The court found that the sum of $873.59 should be paid to Bott, representing 23.7 per cent of such expenditures, and made this amount a lien upon Rich's interest. This was based on the ground that Bott, as a cotenant, had advanced the full sum of $3,686.02 for the benefit of the common property and that Rich's interest should bear its proportionate share of such expense. In view of our holdings in the preceding portions of this opinion, we find no reason for disturbing the finding of the trial court.

For the reasons given, the decree and judgment of the trial court is affirmed.—Affirmed.

ANDERSON, C. J., and ALBERT, MITCHELL, KINTZINGER, PARSONS, RICHARDS, and HAMILTON, JJ., concur.